**CONSOLIDATED SCHOOL DISTRICT
NO. 1 OF JACKSON COUNTY,
Missouri, Appellant,**

v.

**JACKSON COUNTY, Missouri,
et al. Respondents.**

No. 78757.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1996.

Rehearing Denied Jan. 21, 1997.

Steven L. Wright, Columbia, Christopher S. Gahagan, Kansas City, for appellant.

Michael T. White, James C. Bowers, Jr., Cathy J. Dean, Aaron G. March, Kansas City, for respondents.

WHITE, Judge.

In 1982, a constitutional amendment replaced Missouri's personal property tax on merchandising and manufacturing inventory with a real property tax on commercial real estate.[1] The "M & M replacement tax" was calculated so that, in its first year, it provided the same amount of revenue as the old personal property tax had provided in the previous year. Thereafter, the proceeds from the tax were designed to fluctuate with changes in the assessed value of property subject to the tax. Other taxes on real property are subject to abatement.[2] To promote development of blighted areas, the legislature allows municipalities to designate certain zones for limited property tax relief. Tax Increment Financing (TIF) replaces tax on increases in the value of property within these areas with "payments in lieu of taxes" (PILOTS), which are used to offset develop-

---

1. Mo. Const. Art. X, § 6.2.

2. Mo. Const. Art. X, § 7.

ment costs.[3] The question we decide in this case is whether the legislature may, constitutionally, abate the M & M replacement tax, and whether the TIF legislation does, in fact, authorize such tax relief. We hold neither the constitution nor the legislature has exempted the M & M replacement tax from the general scheme of TIF and, therefore, affirm.

The facts were stipulated. In 1993, Kansas City adopted a redevelopment plan to spur development of an area undermined by a closed limestone mine. The school district is a taxing authority which contains the redevelopment plan area. If the replacement tax revenues are included in the TIF plan, the replacement tax based upon any increase in the value of the property will be diverted from the district to pay for the development of the property.

## Application of TIF to the Replacement Tax

■ The school district argues that the TIF statute does not authorize abatement of the replacement tax. It points to § 99.845.1, which specifies how "the ad valorem taxes, and payments in lieu of taxes, if any, arising from the levies upon taxable real property in such redevelopment project by taxing districts" are to be divided. The district does not dispute that the replacement tax is an ad valorem tax, but instead argues that it is not a "lev[y] . . . by the taxing district," since the tax is directly imposed by the constitution, not by the actions of individual taxing districts. This argument fails.

First, § 99.845 does not purport to define the scope of the TIF act. That section refers to "ad valorem taxes and payments in lieu of taxes," but it does not describe which taxes become payments in lieu of taxes. In fact, no specific delineation of which taxes are to be abated is found in the statute. Section 99.805(7) is circular, defining PILOTS as "revenues from real property . . . which taxing districts would have received had a municipality not adopted" TIF. Section 99.855.2

comes closest to prescribing the scope of the TIF abatement. "For the purpose of measuring the size of [PILOTS], all tax levies shall then be extended to the current equalized assessed value of all [TIF] property . . . in the same manner as the tax rate percentage is extended to all other property in the taxing district." Reading these sections together leads to the conclusion that the legislature intended to convert all ad valorem tax revenue increases in TIF areas, which were due to increases in value of the real property in the area, into PILOTS. Nothing in the statute indicates replacement tax receipts, or any other "revenues from real property," are to be exempted from the program.

## Constitutionality of TIF

■ The school district argues that if the TIF legislation applies to the replacement tax, then it is unconstitutional. The district urges this Court to hold that the replacement tax is unique because it is fully implemented by the constitution, without any discretion for the legislature to change it: "Each year after the first year the replacement tax is imposed, the amount distributed to each taxing authority in a county shall be increased or decreased by an amount equal to the amount resulting from the change in that district's total assessed value of property . . . ."[4] Although the district recognizes that abatement of property taxes is also constitutionally authorized,[5] it argues that the replacement tax is an exception to the abatement authorization.

■ The district bears an extremely heavy burden. "When the constitutionality of a statute is attacked, constitutionality is presumed, and the burden is upon the attacker to prove the statute unconstitutional."[6] The Court will not invalidate a statute "unless it clearly and undoubtedly contravenes the constitution" and "plainly and palpably affronts fundamental law embodied in the constitution."[7] Additionally, we "attempt to

---

**3.** §§ 99.800–99.865, RSMo 1994.

**4.** Mo. Const. Art. X, § 6.2.

**5.** Mo. Const. Art. X, § 7.

**6.** *Schnorbus v. Director of Revenue,* 790 S.W.2d 241, 242–43 (Mo. banc 1990) (citations omitted).

**7.** *Adams v. Children's Mercy Hosp.,* 832 S.W.2d 898, 903 (Mo. banc 1992).

harmonize all provisions of the constitution[.]"[8]

We find no conflict between the two constitutional provisions. Section 6.2 imposes a tax on real estate. Under § 7 "the general assembly by general law may provide for such partial relief from taxation of the lands devoted to" rehabilitation of blighted areas. Nothing in § 6.2 suggests that the tax imposed is different from any other tax authorized by the constitution. Section 7 is a specific grant of power to the general assembly to abate taxes on land, including the tax imposed by § 6.2, for the purposes specified therein.

Our conclusion is buttressed by Art. X, § 3, which provides that "the methods of determining the value of property for taxation shall be fixed by law." Replacement tax distributions are explicitly tied to the "district's total assessed value of property," an amount the constitution specifically allows the legislature to determine. All the legislature has done in the TIF act is to freeze the value of the property for tax purposes at its initial equalized assessed value for the period of the redevelopment plan.

## Conclusion

Replacement tax revenues are includable in a TIF plan, and the adoption of such a plan does not violate the constitution.

The judgment of the circuit court is affirmed.

All concur.

8. *Gregory v. Corrigan*, 685 S.W.2d 840, 843 (Mo. banc 1985).