Honorable Maynard Wallace Representative, District 143 State Capitol Building Jefferson City, MO 65101
Dear Representative Wallace:
You have requested an opinion on the following questions:
 Does an entity that placed a vote before the people to go to a sales tax revenue instead of a property tax revenue, set their levy at zero for 2003, receive a part of the surtax established in 1985? [Are] the levy and surtax related in any way?
The surtax referred to in your opinion request is a tax on commercial real estate, imposed pursuant to Article X, Section 6 of the Missouri Constitution. That tax was adopted by constitutional amendment and replaced Missouri's personal property tax on merchandising and manufacturing inventory. Based on the information provided to us, we understand that your opinion request relates in particular to the Taney County Ambulance District, which exercised the option provided to it by Section 321.552, RSMo Cum. Supp. 2002, to adopt a sales tax and make an accompanying reduction in its property tax rate. We further understand that the reduction resulted in the District's property tax rate being set at zero.
Accordingly, your request calls for us to determine whether a district that adopts a sales tax pursuant to Section 321.552, RSMo Cum. Supp. 2002, and as a result reduces its property tax rate to zero, should still receive proceeds from the replacement tax imposed pursuant to Article X, Section 6. For the reasons described below, we conclude that such a district should continue to receive proceeds from the replacement tax.
 Article X, Section 6 Replacement Tax
Article X, Section 6 exempts merchants' and manufacturers' inventories from taxation. When that exemption was adopted, it did away with pre-existing taxes on such property. To replace the revenues lost because of the exemption, Article X, Section 6 imposes a tax on commercial property. Article X, Section 6.1 and .4. As the Supreme Court of Missouri has explained, the replacement tax: "[W]as calculated so that, in its first year, it provided the same amount of revenue as the old personal property tax had provided in the previous year. Thereafter, the proceeds from the tax were designed to fluctuate with changes in the assessed value of property subject to the tax." Consol. School Dist.No. 1 of Jackson County v. Jackson County, 936 S.W.2d 102 (Mo.banc 1996). The county clerk determines the rate for that tax, based on a calculation of the total revenue lost by all taxing authorities in the county as a result of the exemption. The county collector then divides and distributes the proceeds of the county-wide replacement tax to each taxing authority in the county according to its share of the total amount of lost revenues. Article X, Section 6.2.
Specifically, Article X, Section 6 provides:
 1. . . . all personal property held as industrial inventories, including raw materials, work in progress and finished work on hand, by manufacturers and refiners, and all personal property held as goods, wares, merchandise, stock in trade or inventory for resale by distributors, wholesalers, or retail merchants or establishments shall be exempt from taxation; . . .
 2. All revenues lost because of the exemption of certain personal property of manufacturers, refiners, distributors, wholesalers, and retail merchants and establishments shall be replaced to each taxing authority within a county from a countywide tax hereby imposed on all property in subclass 3 of class 1 in each county. For the year in which the exemption becomes effective, the county clerk shall calculate the total revenue lost by all taxing authorities in the county and extend upon all property in subclass 3 of class 1 within the county, a tax at the rate necessary to produce that amount. The rate of tax levied in each county according to this subsection shall not be increased above the rate first imposed and will stand levied at that rate unless later reduced according to the provisions of subsection 3. The county collector shall disburse the proceeds according to the revenue lost by each taxing authority because of the exemption of such property in that county. Restitution of the revenues lost by any taxing district contained in more than one county shall be from the several counties according to the revenue lost because of the exemption of property in each county. Each year after the first year the replacement tax is imposed, the amount distributed to each taxing authority in a county shall be increased or decreased by an amount equal to the amount resulting from the change in that district's total assessed value of property in subclass 3 of class 1 at the countywide replacement tax rate. In order to implement the provisions of this subsection, the limits set in section 11(b) of this article may be exceeded, without voter approval, if necessary to allow each county listed in section 11(b) to comply with this subsection.
 3. Any increase in the tax rate imposed pursuant to subsection 2 of this section shall be decreased if such decrease is approved by a majority of the voters of the county voting on such decrease. A decrease in the increased tax rate imposed under subsection 2 of this section may be submitted to the voters of a county by the governing body thereof upon its own order, ordinance, or resolution and shall be submitted upon the petition of at least eight percent of the qualified voters who voted in the immediately preceding gubernatorial election.
 4. As used in this section, the terms "revenues lost" and "lost revenues" shall mean that revenue which each taxing authority received from the imposition of a tangible personal property tax on all personal property held as industrial inventories, including raw materials, work in progress and finished work on hand, by manufacturers and refiners, and all personal property held as goods, wares, merchandise, stock in trade or inventory for resale by distributors, wholesalers, or retail merchants or establishments in the last full tax year immediately preceding the effective date of the exemption from taxation granted for such property under subsection 1 of this section, and which was no longer received after such exemption became effective.
The legislature has enacted implementing legislation to further detail the process for determining the rate of the replacement tax and the distribution of its proceeds. See Section 139.600, RSMo 2000.
Section 321.552 — Substitution of Sales Tax for Property Tax
The Taney County Ambulance District may levy and collect property taxes. See Sections 190.010, 190.040, 190.041, 190.043, and 190.074, RSMo 2000. Section 321.552, RSMo Cum. Supp. 2002, provides that an ambulance district meeting certain criteria may choose to impose a sales tax and make an accompanying reduction in its property tax rate.
Specifically, Section 321.552, RSMo Cum. Supp. 2002, provides in pertinent part:
 1. [Except in certain counties], the governing body of any ambulance or fire protection district may impose a sales tax in an amount up to one-half of one percent on all retail sales made in such ambulance or fire protection district which are subject to taxation pursuant to the provisions of sections 144.010 to 144.525, RSMo, provided that such sales tax shall be accompanied by a reduction in the district's tax rate as defined in section 137.073, RSMo. The tax authorized by this section shall be in addition to any and all other sales taxes allowed by law, except that no sales tax imposed pursuant to the provisions of this section shall be effective unless the governing body of the ambulance or fire protection district submits to the voters of such ambulance or fire protection district, at a municipal or state general, primary or special election, a proposal to authorize the governing body of the ambulance or fire protection district to impose a tax pursuant to this section.
 2. The ballot of submission shall contain, but need not be limited to, the following language:
 "Shall ___________________________ (insert name of ambulance or fire protection district) impose a sales tax of ___________________________ (insert amount up to one-half) of one percent for the purpose of providing revenues for the operation of the ___________________________ (insert name of ambulance or fire protection district) and the total property tax levy on properties in the ___________________________ (insert name of the ambulance or fire protection district) shall be reduced annually by an amount which reduces property tax revenues by an amount equal to fifty percent of the previous year's revenue collected from this sales tax?
___ Yes ___ No
 If you are in favor of the question, place an "X" in the box opposite "Yes". If you are opposed to the question, place an "X" in the box opposite "No"."
 3. If a majority of the votes cast on the proposal by the qualified voters voting thereon are in favor of the proposal, then the sales tax authorized in this section shall be in effect and the governing body of the ambulance or fire protection district shall lower the level of its tax rate by an amount which reduces property tax revenues by an amount equal to fifty percent of the amount of sales tax collected in the preceding year.
 Analysis
The language of Article X, Section 6 imposes the replacement tax and provides for its distribution to taxing authorities such as the Taney County Ambulance District. Thus, the replacement tax is imposed and distributed independent of any property tax set by the District pursuant to its taxing authority under the provisions of Chapter 190, RSMo 2000. Indeed, this office has previously opined that a taxing authority may not voluntarily forgo the replacement tax revenue to which it is entitled under Article X, Section 6. See Opinion No. 44, Moseley, 1991. Accordingly, while the legislature may enact a law providing for abatement of the replacement tax (see Consol. School Dist. No. 1 ofJackson County, 936 S.W.2d at 102), an action by the District should not be construed to eliminate its replacement tax revenue unless a provision of law dictates that result.
In this instance, the law does not provide for the elimination of the District's replacement tax revenue. Section 321.552.1, RSMo Cum. Supp. 2002, states that an ambulance district may impose a sales tax, "provided that such sales tax shall be accompanied by a reduction in the district's tax rate as defined in section 137.073, RSMo." By referring to the "district's tax rate as defined in section 137.073, RSMo," the legislature excluded the replacement tax from reduction as a result of the adoption of a sales tax. Section 137.073.1(2), RSMo 2000, defines the term "tax rate" for purposes of Section 137.073 so that it: "[I]ncludes the tax rate for each purpose of taxation of property a taxing authority is authorized to levy without a vote and any tax rate authorized by election, including bond interest and sinking fund[.]" The replacement tax does not fit this definition and thus is not part of the "district's tax rate as defined in section 137.073, RSMo." The replacement tax is authorized and levied directly by the terms of Article X, Section 6, not by the "taxing authority" or by "election." This is apparent from the text of Article X, Section 6, which requires no action by any taxing authority and no election to impose the tax and, indeed, sets out in Article X, Section 6.3 a special procedure independent of any action by a particular taxing authority for reduction of the replacement tax.
In addition, Section 137.074.1, RSMo 2000, states:
 For the purpose of determining any tax rate under section 137.073, or other applicable provisions of the statutes or constitution of this state, the tax revenue from any personal property of manufacturers, refiners, distributors, wholesalers, and retail merchants and establishments which falls in the category of personal property exempted from taxation under subsection 1 of section 6 of article X of the Constitution of Missouri shall not be included in the prior year's tax revenues used in determining tax rates for use after the effective date of the exemption of such personal property of manufacturers, refiners, distributors, wholesalers, and retail merchants and establishments.
This provision further demonstrates the legislature's intent that the pre-existing merchants' and manufacturers' tax was to be considered separate from the tax rates established pursuant to the provisions of Section 137.073. That reinforces the conclusion that the tax imposed by Article X, Section 6 to replace the revenues of the pre-existing personal property tax should be considered separate from a tax rate set pursuant to the provisions of Section 137.073. Accordingly, the replacement tax is not a tax rate that must be reduced to accompany the adoption of a sales tax pursuant to Section 321.552, RSMo Cum. Supp. 2002.
 CONCLUSION
An action by an ambulance district to impose a sales tax pursuant to Section 321.552, RSMo Cum. Supp. 2002, and make an accompanying reduction in its tax rate as defined in Section 137.073, RSMo 2000, thus setting that tax rate at zero, does not interfere with the district's entitlement to revenue from the replacement tax imposed pursuant to Article X, Section 6 of the Missouri Constitution.
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General